**WILLIS et al. v. NECHES CANAL CO. et al.**
(No. 1479.)

Court of Civil Appeals of Texas. Beaumont.
March 29, 1928.

Rehearing Denied June 6, 1928.

1. **Waters and water courses ⊙⟶249—Land-
owners' right to priority in use of water must
be determined as if statutes had been written
into contract with irrigation company (Rev.
St. 1925, arts. 7466–7537).**

Landowners' right to priority in use of wa-
ter must be determined as if all provisions of
Rev. St. 1925, arts. 7466–7537, regulating use
of state waters, had been written into their
contract with irrigation company, and their
rights must be determined by construction of
such statutes rather than of the contract.

2. **Appeal and error ⊙⟶930(1)—Evidence will
be construed by appellate court to sustain
judgment in absence of contrary showing.**

Evidence will be construed by appellate
court to support judgment, in absence of con-
trary showing by such evidence, even if evi-
dence does not affirmatively support conclusion
favoring judgment.

3. **Waters and water courses ⊙⟶249—In case
of water shortage, all lands adjoining or con-
tiguous to irrigation company's canals have
equal rights to available supply (Rev. St.
1925, arts. 7472, 7555, 7557, 7559).**

Under Rev. St. 1925, arts. 7555, 7557, 7559,
all lands adjoining or contiguous to the canals
and laterals of an irrigation company have
equal rights to available water supply in case
of a water shortage, without regard to when the
particular acreage was first put in cultivation or
was first supplied with water from such canals,
notwithstanding article 7472, providing that as
between proprietors the first in time is the
first in right.

Appeal from District Court, Jefferson
County; Geo. C. O'Brien, Judge.

Action by B. H. Willis and others against
Neches Canal Company and another. Judg-
ment for defendants, and plaintiffs appeal.
Affirmed.

Oliver J. Todd, Chas. S. Pipkin, and A. D.
Moore, all of Beaumont, for appellants.

C. A. Lord, of Beaumont, for appellee Nolte
Irrigation Co.

George Chilton, of Beaumont, for appellee
Neches Canal Co.

WALKER, J. In 1925 appellant B. H. Wil-
lis, as owner of the land, and his coappellees,
as his tenants, farmed in rice 1,189.96 acres
of land adjoining and contiguous to the canal
and laterals of the Nolte Irrigation Company,
constructed and maintained under the provi-
sions of the statutes of this state regulating
the use of state waters, being chapter 1 of
title 128, as brought forward in the Revision
of 1925. The Nolte Irrigation Company bears
some relation, not fully explained, to the

Neches Canal Company, chartered in 1902 or
1903 as an irrigation company. In 1913 the
Neches Canal Company filed its water appro-
priation, as required by the legislation of that
year, stating that the canal known in this rec-
ord as the Nolte Canal was one of the branch-
es of the Neches Canal, and was owned by it.
This appropriation involved about 40,000
acres of land, including the Willis land, to be
irrigated by the Neches Canal Company, and
showed that more than 30,000 acres of this
land was so irrigated in 1913. In 1925, the
Neches Canal Company contracted to irrigate
18,000 acres of land, all of which, so far as
this record shows, was adjoining or contigu-
ous to its canal and laterals or the canal and
laterals of the Nolte Irrigation Company.
The Nolte Irrigation Company made a sep-
arate and independent contract with those
owning land on its canal and laterals, agree-
ing to relift the water from the Neches Canal.
The Willis land was on the Nolte Canal.
About 8,000 acres of this 18,000 acres, includ-
ing the Willis land, was irrigated in 1913 and
prior years, and will be referred to herein as
the old land. The remaining 10,000 acres, of
which the Willis land was not a part, was
first irrigated subsequent to 1913, some of it
being first irrigated in 1925, and will be re-
ferred to as the new land. A part of the
8,000 acres of the old land belonged to the
irrigation companies and was farmed either
by them or by their tenants. The exact rela-
tion between the two irrigation companies
was not shown, but for the purposes of this
opinion they are treated as one and the same,
and the canal of the Nolte Irrigation Compa-
ny is treated as an extension and a part of
the canal of the Neches Canal Company.

In 1925 all the Gulf Coast, including all
the lands covered by the appropriation of the
Neches Canal Company, suffered the most se-
vere drouth in the memory of its oldest in-
habitants. As a result of this drouth the sup-
ply of fresh water available to the two canal
companies for the use of their customers was
limited, and in fact their supply was not rea-
sonably sufficient for more than 9,000 acres.
Of this supply, the Neches Canal Company
diverted 2,000 acres of water to the city of
Port Arthur, transporting this water about
20 miles beyond the limits of its 1913 appro-
priation and outside of the watershed of its
source of supply as indicated by its appro-
priation. All the land of the original appro-
priation lies within the watershed of Pine Is-
land bayou, the source indicated by the orig-
inal appropriation, and the physical equip-
ment of the Neches Canal Company and its
supply of water in ordinary years was rea-
sonably sufficient to care for and irrigate all
the said 40,000 acres. Except as to the 2,000
acres of water diverted to the city of Port
Arthur, the canal companies, in the exercise
of good faith and in due care, made a fair
pro rata division of the available water sup-

ply, prorating the same among all their customers on an acreage basis, giving no preference or priority to any land above other land, recognizing no priority of the old land as against the new land. Because of this shortage of water, and as a proximate result thereof, appellants' rice crop suffered material damage, causing, in fact, a large financial loss to all the appellants. This suit was brought by appellants against the appellees, the two irrigation companies, to recover this loss. Facts were alleged showing the amount of the loss and charging appellees with the responsibility therefor. On the verdict of the jury that appellees fairly prorated the water, that appellants were tendered their pro rata portion of the water on the basis, as stated supra, that appellants did not waste the water tendered them, and that the diversion of water to the city of Port Arthur was too insignificant to be a contributing cause of the loss complained of, the trial court entered judgment against appellants and in favor of appellees. Appellants charge that the drouth of 1925 was a continuation of the drouth of 1924, and that appellees were guilty of negligence in contracting and undertaking to irrigate 18,000 acres of land. The issues on these allegations were not submitted to the jury, but the court's judgment in favor of appellees resolved them in their favor, and in support of the judgment we conclude that appellees acted in good faith towards all their customers in undertaking to irrigate the 18,-000 acres.

While appellants have brought forward many assignments of error and propositions, all of them are disposed of by the verdict of the jury except their proposition that as a matter of law the 8,000 acres of old land had a prior right to all the available water in 1925, as against the new land, and that the court, on the undisputed facts, erred in not so instructing the jury. The facts of this proposition were not involved in the verdict of the jury. This proposition of law was duly presented to the trial court and denied, since it was the judgment of the trial court that it was the duty of the two canal companies to prorate the water among all those who were taking water from them, without regard to the question of priority. The evidence made issues against a fair pro rata division on the trial court's construction of the law and of good faith in the division of the water as actually made. But these issues were decided by the jury adversely to appellants' contention, and we are not asked to set aside their findings, nor their finding in regard to the water diverted to the city of Port Arthur. While appellants contend that the canal companies had no legal right to divert any part of the available supply of water to the land owned by them, it is not necessary for us to pass on that proposition, since on the statement made by appellants the available supply

was sufficient for the 8,000 acres of land, which included the land of the canal companies as well as the land of the appellants. Therefore, since there was enough water for all the old land, the diversion of the water by the canal companies to their own land could not have been a proximate cause of the loss complained of. Again, appellants complain of the diversion of the 2,000 acres of water to the city of Port Arthur. This proposition we do not discuss, since under the jury's verdict this diversion was not a proximate cause of appellant's loss. This follows because the jury found that the shortage of water furnished appellants was not substantially and materially increased by the diversion to the city of Port Arthur. While appellants do not ask us to set aside this finding, they advance the proposition in support of their requested peremptory instruction that as between them and the city of Port Arthur they were entitled to all this 2,000 acres of water. Therefore they say that regardless of any right of priority as between them and the other rice farmers the court should have peremptorily instructed a verdict in their favor. This is not a sound proposition. If the water had not been so diverted appellants would have been entitled only to a pro rata division thereof. If the old land was entitled to priority, they did not need any portion of this 2,000 acres of water. If the old land was not entitled to priority, then under the verdict of the jury the diversion to the city of Port Arthur was too insignificant to be a contributing cause of their loss.

So on the statement as made we have one question only: Was the old land, in view of the shortage in 1925 of the available supply of water, entitled to a priority over the new land?

Appellants base their right to priority on article 7472, Revised Statutes 1925, providing: "As between appropriators, the first in time is the first in right." Admittedly, the old land was irrigated by the appellees prior to the new land. Therefore, appellants say, the old land had a prior vested right in the available water supply of 1925. In 1925 appellees were furnishing water to appellants and their other customers under identical contracts, embodying the provisions of article 7557, as follows:

"In case of shortage of water from drouth, accident or other cause, all waters to be distributed shall be divided among all customers pro rata, according to the amount he or they may be entitled to, to the end that all shall suffer alike, and preference be given none."

Appellants say that this article did not authorize nor make legal the division of the water as actually made, because its meaning, they say, is limited by article 7558:

"Nothing in the preceding article contained shall be held to preclude any such person, association of persons, or corporation owning or

controlling such water from supplying the same to any person having a prior vested right thereto under the laws of this state."

[1] And they say, the contract to the contrary notwithstanding, appellees had no right to exact a contract of them abrogating their legal rights under the statutes regulating the use of state waters. We think this proposition has direct support in Edinburg Irrigation Co. v. Ledbetter (Tex. Com. App.) 286 S. W. 185, and therefore agree with appellants that their right to priority in the use of the water must be determined as if all the provisions of chapter 1, tit. 128, regulating the use of state waters, had been written into their contract, and that their rights must be determined by a construction of the statutes, rather than of the contract. On this proposition, it is not necessary to make a further statement of the contract.

[2, 3] We have concluded, as stated, supra, that all the land irrigated in 1925 by appellees adjoined or was contiguous to their canals and laterals. If the evidence does not affirmatively support this conclusion, appellants have made no statement to the contrary and therefore the conclusion follows in support of the judgment appealed from. Under article 7555, all this land in 1925 was entitled to be supplied with water from the adjoining and contiguous canals and laterals. Under article 7559, this right was permanent and an easement to said land passing with the title. The owners thereof, under article 7559, were entitled to the use of water to be supplied by appellees under the conditions of the statutes regulating the use of state waters. Articles 7555, 7557, and 7559 were called directly to the attention of the Commission of Appeals in the Ledbetter Case, supra, which involved the proposition of priority now advanced by appellants. That case is cited and quoted from extensively by both parties to this appeal, each contending that it supports their propositions. We have given it, therefore, the most careful consideration. As construed by that case, the cited articles, to wit: 7555, 7557, and 7559, deny the right of priority as among the owners of lands adjoining or contiguous to the canals and laterals of an irrigation company. That case holds that all land so situated has equal right to the available water supply in case of a water shortage—and that without regard to when particular acreage was first put in cultivation or was first supplied with water

from the canals of the irrigation company. It follows that appellants, though their land as a part of the old land was irrigated by appellees from their canals prior to the new land, had no prior right to the available water supply, and that appellees rested under the legal duty of dividing among all their customers on a pro rata basis the available supply of water, to the end that all should suffer alike and preference be given to none. This duty, under the verdict of the jury, they fully met and discharged.

The construction of article 7472, the language of article 7557, "he or they may be entitled to," and of article 7558, was involved in the Ledbetter Case, and though on this proposition they were not discussed by the Commission of Appeals, they were, in fact, made to yield to the provisions of article 7557, denying the right of priority and directing a pro rata division. Under the Ledbetter Case, as between the owners of land coming within the provisions of article 7555, there is no "prior or vested right" to water in case of a shortage.

From what we have said it follows that the judgment of the trial court must be affirmed, and same is hereby in all things affirmed.

### On Rehearing.

On motion of appellant we make the following additional conclusions of fact:

1. That the 10,000 acres of new land cultivated on the Neches Canal and its tributaries in 1925 were neither adjoining nor contiguous to the canal or laterals of said company in 1913 and were not included within the appropriation of March, 1913, or any subsequent appropriation.

2. Appellants excepted to the special issues submitted to the jury regarding the water carried to Port Arthur, on the ground that such issue was not raised by the pleadings or the evidence.

3. Appellants further excepted to the judgment and verdict as being against the great weight and preponderance of the evidence.

4. Appellants requested a peremptory instruction and excepted to the action of the court in submitting the case to the jury.

The other additional findings requested by appellants are refused. We have given most careful consideration to appellants' motion for rehearing, and it is in all things denied, except as to the additional conclusions of fact given, supra.