## GARWOOD IRR. CO. v. WILLIAMS et al.

### No. 12265.

Court of Civil Appeals of Texas. Galveston.

Oct. 11, 1951.

Rehearing Denied Nov. 8, 1951.

Miller & Rutta, G. H. Miller, Columbus, Vinson, Elkins & Weems, R. Richard Roberts, Houston, for appellant.

Massey, Hodges, Moore & Gates, Hollis Massey and Otto Moore, Jr., Columbus, for appellee.

GRAVES, Justice.

"This is a rice-crop damage suit, in which Plaintiff, John J. Williams, sought recovery of alleged damages in the amount of some $20,841.11. The case was tried to a jury, and resulted in a verdict for Plaintiff, on special-issues, as a part of which the jury found damages in terms of barrels-of-rice; and, after converting the barrels-of-rice into dollars, the court entered judgment against Defendant for $8,432.34."

On the appeal to this Court from that judgment below, the defendant, a Texas corporation organized under the Revised

Civil Statutes of Texas, for irrigation purposes, has become the appellant; while the plaintiff below, a rice farmer, with his lands located along and adjacent to the irrigation canals, laterals, and other facilities of the corporation, has become the appellee.

In such suit, the appellee declared upon an alleged contract between himself and the appellant, whereby it had undertaken to furnish him water for the irrigation of his crop on his 3 tracts of rice land during the year of 1948, but that, he further averred, in derogation of his rights under such contract and undertaking with the appellant, "it had failed to furnish him his fair and equitable share of the water available to it for that year for such a purpose, because of its unlawful discrimination against him, and in favor of other water-users, in violation of his legal rights."

The appellant denied all such allegations, especially those asserting discrimination against the appellee in favor of any other water users along its canals, and affirmatively declared that the appellee himself had been responsible for his own short yields in his rice crop for 1948; further, that he had received his proper share of its available irrigation water for that season, but that he was a negligent, inexperienced, and incompetent rice farmer in the manner in which he had planted, watered, and cared for his rice crop; that such negligent incompetency was the cause of any shortage in his crop, regardless of the quantity of water furnished him, and that he had, in fact, produced as much of the various types of rice on his lands for that year as he could reasonably have done, regardless of the water actually furnished to him.

In other words, with the relations of the parties to the litigation so entered into—the appellee's damage claim was primarily based upon the legal theory that he had been so discriminated against.

In the details, he specified that the appellant had, to his deprivation, furnished more water to other users of its available supply for that year than, as comparable with himself, they were entitled to.

The trial court submitted what it deemed to be the ultimate issues of fact raised by the pleadings and evidence to a jury, in some 11 questions, inquiring of it, as indicated, supra, what damages—in terms of barrels of rice—the appellee had suffered as the result of the alleged discriminatory acts of appellant, for the year 1948, if any.

All such issues were answered by the jury in favor of the appellee, wherein it specified the respective numbers of barrels on the different tracts of appellee's land, on which there had been a shortage in yield below what there should have been.

The trial court thereupon heard evidence upon that feature, and, as the quoted statement above has recited, "after converting the barrels-of-rice into dollars, the court entered judgment against Defendant for $8,432.34."

In this court, the appellant presents some 31 points of error, which the appellee, in turn, replies to with some 24 counter-points.

The record is long, and, as seems to this court, is—upon the appeal, at least—extended into irrelevant and unnecessary discussions.

The appellant, however, has reduced its total points to 19 groups, which it has briefed and argued here; whereas, the appellee has likewise reduced his counter-points to 19.

In limine, the appellant, with deference to, rather than in a spirit of criticism of, the trial court, asserts more than once its overall position as to the appeal to be this: "It clearly appears from the record that the entire case was tried, submitted, and adjudicated by the trial court on certain fundamentally erroneous concepts of the law governing irrigation companies. This statement is not made critically, since the law of water rights is not highly developed in this State and the trial courts are not accustomed to frequent, if any, cases involving the same. Running throughout the trial court's rulings, charge, and judgment, are the following erroneous concepts:" It follows this with 6 specifications of what it deems to be such "erroneous concepts" upon the trial court's part, which, in substance, were these:

First, that an irrigation corporation cannot contract with a water user so as to

limit its liability, in event it is unable to supply all water demanded by the user;

Second, that no rice lands of a stockholder in such corporation, or of anyone of his family, are entitled to water equally with the lands of any other user, such as appellee herein;

Third, the irrigation corporation was bound to deliver water *on* all the appellee's land, rather than, simply, to make it available to him through a water gate at his canal;

Fourth, that because the appellee alleged his damages in subdivisions, relating to 3 varieties of rice, he was entitled to separate special issues as to "each particular variety, as a unit, even though that particular variety of rice was planted in several different fields, watered through different water gates, and concerning each of which fields the testimony is substantially different as to the crop yield, the water delivered, mishaps which occurred in connection with levees, and sundry other factors affecting the crop";

Fifth, that appellant was liable in damages, if the jury found, in answering a special issue, that appellee did not get his "fair share" of the available water, "despite the inherent fact that 'fair share' may have a different connotation to each of twelve men, and is not the measure of an irrigation company's obligation by any statute, or any decision in this State; (By statute, the irrigation company is obligated to distribute water, in times of shortage, 'pro rata', in such manner that all shall suffer alike). 'Pro rata' may not be a 'fair share' at all, depending upon the facts relating to the condition of the crop in each field";

Sixth, that the appellee was entitled to recover, without showing how much his crop yield had been reduced, if any, by some act of appellant, although it was established "that there were other features that contributed to the reduced yield."

On the other hand, replying thereto, the appellee, as indicated above, reiterates that his cause was based solely "on the theory of discrimination, in that he did not receive his proportionate, fair, and equitable share of the *available water* for irrigation of his crop in 1948," and that the relatively simple issues were properly submitted in the special inquiries so made of the jury, and were, on sufficient evidence, properly established by its verdict.

■ This court, beginning with what seems to it to be the starting point, is unable to sustain the appellant's "fifth point," under which it contends that the appellee failed to establish any water contract with the appellant, obligating it to irrigate his 1948 rice crop, as declared upon by him.

Upon the contrary, it is held that the pleadings and proof offered by the appellee established such a contract as he declared upon; indeed, that the appellant itself so admitted of record during the trial of the cause; moreover, in his amended petition, the appellee alleged the appellant to be such a public service corporation under the statutes of Texas, and that he had a written contract with it as such.

Appellant did not file a written denial of such action, as required by Rule 52, Texas Rules of Civil Procedure, and, during the course of the trial, its counsel admitted— upon a direct inquiry to him from the court —that appellant had entered into the contract as so prescribed under by the appellee.

This court is unable to construe the trial court's conception of the legal reaches of the cause as appellant so does, in its submission thereof to the jury. On the contrary, the charge, following the pleadings, submitted to the jury's arbitrament, the comparatively simple inquiry of whether or not the acts of discrimination in the furnishing of its water to him, one of its users, as alleged upon the one hand by appellee, and denied in detail by the appellant upon the other, had occurred.

It further submitted direct inquiries as to which of such positions had been established, thereby giving the appellee, upon the one side, the benefit of his claim that such discrimination had been practiced, and equally affording the appellant, upon the other, not only advantage of its denial

thereof, but further of its detailed counterclaim that the entire loss and damage claimed by the appellee, if any, had been caused by his own negligence and incompetence, and not by any dereliction upon its own part.

It is deemed to be beyond the requirements, to detail the large number of issues so submitted to the jury, or their specific answers thereto. The jury, in detail, found the alleged discrimination to have been practiced by the appellant upon the appellee, to have existed, and, in specifically answering each of the inquiries relating to the appellee's 3 different tracts of land, which had been separated from each other, and each planted to a different variety of rice, the number of barrels of rice he would have produced in 1948 upon each of his tracts, separately, over those he did produce thereon, had such determined discrimination not existed.

Not only so, but further, it is not perceived that there was any error committed by the court in taking the totals of such additional barrels of rice, and converting them into money, "at prices agreed upon by the parties", so as to arrive at the $8,432.34 final amount of the judgment rendered.

As recited, the appellee's 3 tracts, which were separate from each other, and differently situated with reference to the location of the appellant's watering facilities, were these: First, 16.87 acres, farmed in Blue Bonnet rice; Second, 115.11 acres, farmed in Zenith rice; and, Third, 131.12 acres, farmed in Patna rice.

As to each of such tracts, the form of the inquiry—indicating such legal theory of the trial court as to the law involved—was this: "Do you find from a preponderance of the evidence that the defendant failed to furnish plaintiff with his fair share of the available irrigation water on the ——— tract of land farmed in ——— rice in 1948 * * *?" If you have answered "Yes" to the foregoing issue, then answer the following issue: "Special-Issue No. ——. Do you find from a preponderance of the evidence that, on account of such failure by defendant, if it did so, the yield per acre of rice was reduced on said ——— acres, and, if so, by how many barrels?"

As indicated, the court further well-nigh cross-examined the jury by inquiries touching upon what the character of the rice farmer, the appellee, was, his experience, whether or not he was negligent, or incompetent, and whether any fault upon his part had anything to do with any diminution of his rice crop for that year, on any of his lands.

The court further took like pains to submit every defense to the suit against it, as plead by the appellant, including its categorical denials of any act of discrimination against the appellee by it, or any other agencies, as charged by the appellee; and further, at its instance, the court also inquired of the jury whether or not the appellee, upon any one of his 3 tracts of land for the year involved (1948) produced "as many barrels of rice as could have been reasonably produced, considering the manner in which the same was planted, watered, cared for, and harvested, regardless of the quantity of water supplied through the water gate, or gates, which furnished water to the same from the canal of defendant".

Whereas, as seems to this court, the cause was properly reduced by the trial court to its elements as one of unfair discrimination by an irrigation corporation in furnishing to one of its water users his share of the available water, and of its having been, on sufficient evidence, found to have been guilty of such discrimination, and to have become liable in damages therefor.

It is no new doctrine in Texas to hold that such an irrigation company, under our statutes and decisions, is a quasi public corporation, and as such, is charged with certain duties to the public by reason of the powers and privileges conferred upon it as such. Edinburg Irrigation Co. v. Ledbetter, Tex.Com.App.1926, 286 S.W. 185; United Irrigation Co. v. Bryan, Tex.Com.App.1926, 280 S.W. 196; American Rio Grande Land & Irrigation Co. v. Mercedes Plantation Co., Tex.Com.App.1919, 208 S.W. 904.

Correlatively, in its turn, such a corporation, as in return for its public responsibility, is, upon its side, given certain public privileges, such as the right of eminent domain. Imperial Irrigation Co. v. Jayne 1911, 104 Tex. 395, 138 S.W. 575. But nowhere in our system, so far as this Court is advised, has any statute or decision of a court relieved such a corporation from the duty to exercise its rights and privileges fairly, equitably, and impartially, as between its patrons.

Under the conclusions stated, it is not deemed indispensable that the "matter of inducement" to, and the manner in which the acts of discrimination herein charged were brought about, be gone into;—that is, whether it was true that the president of the irrigation corporation, his wife, and son, together, among, and as between themselves, owned not only the appellant corporation, but also a co-operative further corporation, known as the _/ /‾ ranch, all whom were engaged in growing and rice farming in the use of appellant's facilities, just as the appellee was; and that appellant, being a family-owned agency, was diverted from its duty by the acts of such individuals, and through such agency, to the disparagement and deprivation to the appellee of his fair share of the 1948 available water in appellant's control.

The trial court submitted no issue to the jury concerning these various charges, nor would it seem to this court that the inquiries raised controlling issues of fact.

Moreover, the court entered its judgment on the verdict of the jury alone, making no additional findings of its own, but merely reciting that, in general, it had, "made such additional considerations and findings, as were necessary or authorized by law, finds, and is of the opinion, on this the 28th day of June, 1950, that Judgment should be rendered for plaintiff."

If, instead of so suing the corporation alone as for such alleged discrimination by it against him, in derogation of his rights as an individual user of its corporate irrigation facilities, he had, jointly and severally, sued with it the "other-users" he so charged with bringing about the corporation's discriminations toward him, as individuals, seeking recoveries against them as such, under allegations that they had prostituted its proper functions as such a corporation and had used its corporate name and form merely as a means of perpetrating a fraud upon him, it seems clear, under a well-established further principle of corporation law in Texas, that the trial court would have had both the power and the duty to look through and disregard the mere corporate form of the appellant, in order to prevent the practice of such a fraud upon the appellee, and to hold such named individual officers, agents, and owners of the corporation, liable to the appellee in their private capacities. 3 Tex. Jur.Supp., Chapter XVIII, pars. 362–386.

The appellee, upon his own part, makes a complaint upon appeal, alleging error in the trial court's having refused him leave to file a trial amendment, allegedly setting out that the appellant had also overloaded its facilities, by attempting, in 1948, to irrigate over 26,000 acres of land; whereas, its capacity at that time had been limited to 25,000 acres. But there appears in the record no cross-assignment of error, as to any such matter, hence the suggestion of it is without any support. Texas Rules of Civil Procedure, rule 374, note 12.

These conclusions require an affirmance of the judgment. It will be so ordered.

Affirmed.