**ALBERS, Ancillary Administrator, etc., Appellant v. GREAT CENTRAL TRANSPORT CORPORATION, Appellee.**

Ohio Appeals, First District, Hamilton County.

Nos. 6416 and 6417. Decided July 10, 1944.

114

Stewart & Beirne, Cincinnati, for appellant.
John M. McCaslin, Cincinnati, for appellee.

## OPINION

By MATTHEWS, J.

In these actions, the trial court sustained demurrers to the third amended petitions on the ground of misjoinder of parties defendant, and the plaintiff not desiring to plead further, dismissed the defendant, Great Central Transport Corporation from the actions and entered judgments in its favor for its costs. The appeals are from those judgments and present the same question. One of the actions is for wrongfully causing the death of Joseph Murphy and the other is to recover damages for his pain and suffering.

According to the allegations of the third amended petition, Great Central Transport Corporation was, on February 25th, 1943, an interstate common carrier of freight under authority of Interstate Commerce Commission and the defendant, H. R. Dallas was engaged in the trucking business in Cincinnati,

Ohio. We quote from the third amended petition that portion which shows the nature of the operation in which the parties were engaged and the relation to one another.

"On or about January 25, 1943, the defendant, The Great Central Transport Corporation, had transported a shipment of goods consigned to Knoxville, Tennessee, from its terminal in Detroit, Michigan, to its terminal in Cincinnati, Ohio. For the purpose of transferring said goods from the defendant's terminal in Cincinnati to the terminal of the carrier operating between Cincinnati and Knoxville, Tennessee, which terminal was also located in Cincinnati, the defendant, Great Central Transport Corporation engaged the defendant, H. R. Dallas, as its agent, servant and employee and authorized and required him to use his own truck and driver for said purpose, and exercised control over the manner and means by which said goods were transferred. Pursuant to said arrangement, defendant, H. R. Dallas, on said date at about 2:00 o'clock, P. M., caused one of his employees, Carl F. Moore, to call for said goods at the terminal of the defendant, Great Central Transport Corporation, and transfer them in one of defendant, H. R. Dallas' trucks, to the terminal of the Blue & Gray Transportation Company, of Cincinnati, Ohio, a trucking company which operated between Cincinnati and Knoxville, Tennessee. Said truck was being backed to the loading platform of the Blue & Gray Transportation Company for the purpose of transferring said goods when the rear part of said truck collided with the person of plaintiff's decedent, Joseph Murphy, crushing decedent's body between the rear of said truck and the loading platform."

One of the negligent acts alleged was that the driver of the truck which collided with decedent's person was only seventeen years old and that his employment was in violation of a safety regulation promulgated by the Interstate Commerce Commission and the laws of Ohio, requiring drivers of trucks of common carriers to be not less than twenty-one years old.

It is clear that both defendants were engaged in interstate commerce at the time and place alleged and, therefore, to the extent that Congress has legislated on the subject, such legislation is controlling under Article VI of the Constitution of the United States. It was so decided in the early case of the Daniel Ball, 77 U. S., (10 Wall.) 557, 19 L. Ed. 999, and the decision has been approved and followed in all subsequent cases without exception. In 11 Am. Jur., 61, et seq. the result of the cases is stated as follows:

"An agency operating entirely within the limits of a state may nevertheless be engaged in interstate or foreign commerce. Thus, when the ultimate destinaton is some point in another state, to be reached by a continuous journey, a shipment or transportation from one point to another within the same state is interstate commerce; and where there was an intention to make a through shipment to the point of final destination, a similar rule is usually held to prevail with respect to a shipment of goods from another state over a connecting line entirely within the state, irrespective of whether there was a common arrangement between the carriers. The interstate character of a through shipment is not affected by limitations on the liability of the several carriers to their own lines or by the fact that goods consigned to a point outside a state are delivered before the state line is reached."

It, therefore, becomes necessary to examine the relevant Act of Congress and regulations of the Interstate Commerce Commisssion to determine the legal status of the defendants created by the arrangement between them as alleged in the plaintiff's third amended petition. The Act of Congress (Chap. 8 of 49 Stat.) 49 U. S. C. A., sec. 302. By that section it is enacted that:

"(a)  The provisions of this chapter apply to the transportation of passengers or property by motor carriers engaged in interstate, or foreign commerce and to the procurement of and the provision of facilities for such transportation, and the regulation of such transportation, and the procurement thereof, and the provision of facilities therefor, is hereby vested in the Interstate Commerce Commission.

x x x x x x

"  (c)  Notwithstanding any provision of this section or of section 303, the provisions of this chapter, except the provisions of section 304 relative to qualifications and maximum hours of service of employees and safety of operation and equipment shall not apply

x x x x x x

"(2)  to transportation by motor vehicle by any person whether as agent · or under a contractual arrangement for a common carrier by railroad subject to Chapter 1 of this Title, an express company subject to Chapter 1 of this Title, a motor carrier subject to this Chapter  x x x x in the performance within terminal areas of transfer, collection, or de-

livery service; but such transportation shall be considered to be performed by such carrier x x x as part of, and shall be regulated in the same manner as, the transportation by x x x motor vehicle, to which such services are incidental."

It is obvious from this quotation that while the defendant Dallas was engaged in interstate commerce, he was excluded from direct regulation by the Interstate Commerce Commission and the Commission's power over that phase of interstate commerce was exerted through its control over Great Central Transportation Corporation, and to that end and for the purposes of the law, his acts are to be "considered to be performed by such carrier x x x x x x as part of, and shall be regulated in the same manner as, the transportation by x x x x motor vehicle, to which such services were incidental."

The Act does not assume to alter the legal relation between the parties as fixed by their contract. The transfer, collection, and delivery within terminal areas might be done through persons bearing the relation of agents or employees of the interstate carrier, whose contract required the crossing of a state line, or by an independent motor carrier engaged exclusively in that phase of the interstate transaction and, therefore, not required to cross a state line. In either event, the Federal power is to be enforced under the Act by regulating the interstate carrier for which the terminal transporting, collecting, and delivering is done, and not by regulating the actual doer of such transporting, collecting and delivering, unless they are the same person.

At no place in the Act is disclosed an intent to make the two agencies joint doers of the act of transporting, collecting, and delivering. Nor does the Act affect in any way the degree of guilt in the event of wrongdoing.

We agree with appellant's counsel that the transportation by Dallas became, under the Act, the transportation of Great Central Transport Corporation and that "this was so whether Dallas acted as an agent or under a contractual arrangement." We so held in **Steffens v Continental Freight Forwarding Co., 66 Oh Ap 534.** Therefore, so the argument runs, Great Central Transport Corporation's liability is based on the statute and not on respondeat superior and for that reason the case of **French v The Central Construction Co., 76 Oh St 509,** is not controlling. We do not think the argument sound. It is true that in that case the Court held that the master whose liability resulted solely under respondeat superior could not be joined with the servant who committed the wrongful act. But it seems to us that the fundamental prin-

ciple applied in that case is much broader. It is that wherever liability in tort rests upon two or more persons and there is no moral fault as to one, he cannot be joined with the one whose wrongful conduct created the liability. The one whose liability is imposed by law alone is not in pari delicto and should he be required to respond he has an action for indemnity against the actual wrongdoer. In French v Central Construction Co., supra, the Court, emphasized the doctrine of respondeat superior, because it was that rule of law that imposed the liability under the facts in that case, and not because it was peculiar to the liability imposed by that special rule of law.

And joinder was not denied in that case because the employer's liability was secondary. Both the employer and employee were primarily liable. Either could have been sued. The employer had no right to require the plaintiff to exhaust the employee before having recourse to it.

The reason given in both French v Central Construction Co., supra, and **Clark v Fry, 8 Oh St 358,** for denying the right to join is that the principal, in the event he is required to pay has a right of action against the agent to recover for his loss resulting from the latter's wrongful act, and that right arises because the principal is not in pari delicto. That that right of indemnity is not limited to the relation of principal and agent is shown by two recent Supreme Court cases— **Maryland Casualty Co. v Frederick Co. 142 Oh St 605,** and **Globe Indemnity Co. v Schmitt, 142 Oh St 595.** In the first named case the Court held as stated in the second paragraph of the syllabus that:

"Where judgment in a tort action is had against a party only secondarily or vicariously liable for the violation of a common duty owed to two persons, upon the payment of such judgment and necessary expenses by such party, there arises an implied contract of indemnity in favor of the party secondarily liable against the person (or persons) primarily liable."

In both cases the liability resulted not from respondeat superior, but because of the occupancy of land in front of which the occupier maintained an opening in the public sidewalk, the covering of which had been removed by an independent contractor who had negligently failed to guard the opening, all without the knowledge of the occupier. In the last named case, the Court quoted with approval from 40 L. R. A. (N.S.) 1148, at 601, this statement:

"The ground of the action is that the defendant has, by his own unauthorized act, exposed the plaintiff to a liability, and it is immaterial whether such liability is imposed by force of a statute or by the rule of the common law, for in either case the plaintiff is held liable by inference of law, and not by reason of his active participation in the act which was the occasion of the injury."

We think it is clear that whatever liability rests upon Great Central Transport Corporation results solely by construction of law and not by reason of actual participation in either the employment by Dallas of a minor or in the negligent conduct of the minor. Great Central Transport Corporation was not a joint tort feasor of either Dallas or Dallas' minor employee or both. The elements of a joint tort did not exist. 26 R. C. L. 766.

We are aware that in a majority of the states and in the Federal courts a joinder of the employer and employee is permitted, (35 Am. Jur., 1028, et seq., Sherwood v Huber, 135 A. L. R. (286 Ky., 775, 151 S. W. (2d.) 1007) 263, but French v Great Central Construction Corporation, supra, has stood as the unquestioned law of Ohio for thirty-seven years, during which the Supreme Court has on several occasions referred to it with approval. **Baltimore & Ohio Rd. Co. v Baillie, 112 Oh St 567, at 573; Landrum v Middaugh, 117 Oh St 608, at 614; Goldberg v Jordan, 130 Oh St 1, at 5; Schroedler v Motometer Garage & Equipment Co., 134 Oh St 78, at 83; Losito v Kruse, 136 Oh St 183, at 187.** In the last named case the Court said at page 183: "Between them, as between tortfeasors in all the above named classes, there exists a primary and secondary liability to the injured party. In any such case the primary liability x x x rests upon the party who actually commits the wrong. While the secondary liabilty x x x x x rests upon the party who, by reason of his relationship to the wrongdoer, is also liable for the wrong committed. In such case there can be no joinder in a single action of the party primarily liable and the party secondarily liable because there is no joint liability."

The last case in which French v Central Construction Co. was cited and approved is **Larson v The Cleveland Ry. Co., 142 Oh St 20, at 34.** The defendants in that case did not bear the relation of employer and employee. However, one was charged with liability as the actual wrongdoer, whereas, the other liability was solely by construction of law. The court held as stated in the fifth paragraph of the syllabus that:

"Where a primary liability for injury rests upon one party and a secondary liability for such injury rests upon another, and the breaches of duty of such parties to the injured party are not through concert of action, or independent and concurrent action, a joint judgment cannot properly be rendered against them."

Counsel relies upon **Liberty Highway Co. et al. v Callahan, 24 Oh Ap 374,** in which French v Central Construction Co. was distinguished on the ground that neither defendant was an actual wrongdoer, but both were liable by construction of law only. In the case at bar we do not think that can be said in view of the allegation that Dallas employed a minor to do the work. In so doing he was an actual wrongdoer, whereas, Great Central Transport Corporation's liability resulting from that act would not be, because of any participation in it, but solely by construction of law.

Counsel also relies on **Wery v Seff, 138 Oh St 307,** in which the court held that the owner of an automobile who entrusted it to his sixteen year old son, contrary to law, was concurrently liable with the son for damages caused by the negligent operation of the automobile by the son; and that they could be joined in an action by the injured person. The Court said the father was personally culpable and for that reason could have no cause of action for indemnity in event of being required to pay the injured person.

While the allegations quoted from the third amended petition expressly state that Dallas was the agent of Great Central Transport Corporation, at no place is it alleged that Moore is its employee. On the contrary, the averment is that Moore is Dallas' employee. It was Dallas and not Great Central Transport Corporation that caused Moore to call for the shipment. The personal culpability was that of Dallas and not that of Great Central Transport Corporation.

There is no allegation that there was any other agent or officer of the defendant corporation present and participating either in Dallas' employment of the minor or in directing the minor in the doing of the negligent act. Certainly, there is no averment that a corporate officer, with such broad authority as to make him the alter ego of the corporation, participated in either the minor's employment or in his negligence. In the absence of such participation, the liability of the corporation must result by implication of law. It is, therefore, not either a joint or concurrent tortfeasor and

cannot be joined in an action with the other, whose culpable conduct caused the injury.

For these reasons, the judgment is affirmed.

ROSS, P. J., and HILDEBRANT, J., concur.