## Sherwood v. Huber & Huber Motor Exp. Co.

Jan. 31, 1941.

As Modified and Extended on Denial of Rehearing June 13, 1941.

Woodward, Dawson & Hobson and Fielden Woodward for appellant.

Trabue, Doolan, Helm & Stites, Watson Clay and Harris W. Coleman for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On September 14, 1937, the appellant and plaintiff below, Mary Evelyn Sherwood, while traveling on one of the streets of the city of Louisville in a hired taxicab was severely injured by a collision of the taxicab in which she was riding with a truck owned and operated by the appellees and defendants below, N. F. Huber, William C. Huber, and L. H. Huber, doing business under the firm name of "Huber and Huber Motor Express Company." The truck was being operated by an agent and servant of the Hubers whose name was Joseph Guenther. Plaintiff instituted an action in the Jefferson circuit court, No. 253,908, against the taxicab company and Guenther, the agent and servant of the instant defendants, in which she obtained judgment against them for the sum of $3,760, upon which she raised execution, followed by a return of "No property found." She thereupon filed this action in the Jefferson circuit court against defendants as the masters of Guenther, in which she alleged the facts we have recited, including her abortive effort to recover for her injuries by the filing of her first action referred to. A demurrer to the petition, filed by the defendants and appellees, was overruled, followed by an answer containing three paragraphs, the first of which was a denial of the material allegations in the petition; the second was a plea of con-

tributory negligence, whilst the third one relied on the filing of the first action by plaintiff against the instant defendants' servant alone, with the knowledge on her part at the time that he was the servant of his masters (the instant defendants) and that in pursuing that course she elected to prosecute her cause of action against defendants' servant alone. They then charged that such facts had the effect of barring her right to maintain the instant action against them. A demurrer filed by plaintiff to that third paragraph of the answer was overruled. Plaintiff declined to plead further and her petition was dismissed, to reverse which she prosecutes this appeal.

From our brief statement of the case it will be perceived that the precise and exact question for determination is that defendants (the master of their servant, Guenther) are liable to plaintiff, if at all, under the doctrine of *respondeat superior,* since there is no claim of any positive or active negligence on their part constituting any participation in the alleged wrongful negligence of their servant in producing plaintiff's injuries. For that reason it is argued by learned counsel for defendants that they were and are not joint tort feasors with their servant, but that they are only secondarily liable to plaintiff—if at all—under judicially declared public policy, and that their liability to her, as so founded, is severable as to them, as masters of their first sued servant, and not as a joint tort feasor with him whose active negligence, if any,—without any participation therein on the part of the defendants—was the sole cause of plaintiff's injuries and consequent damages.

It is then argued by counsel with equal confidence and much research that as a consequence of the first premise (no joint liability as joint feasors) plaintiff, with knowledge of the relationship between Guenther and themselves, should have joined the instant defendants as masters in her first action against their servant, Guenther, and because of her failure to do so she is now estopped to maintain this later separate action against their clients.

It will, therefore, be seen that our task is to unscramble and unravel a most confused condition of the law as declared by some courts dealing with the involved questions, and to arrive at a just, fair and common sense conclusion, stripped of the metaphysical jargon em-

ployed by such courts in wrestling with the presented questions—all of which appears to have emanated from the procedural distinction at common law between actions for purely trespass, and trespass on the case. But the great majority of the courts of the Union—including Federal courts—where common law forms of action have been abolished by the enactment of code proceedings, hold, as is stated in annotations in 98 A. L. R. beginning on page 1057 that: "The basis of this distinction is purely technical, and arose from the adoption of the reformed procedure. Under the old forms the remedy against the master who did not command or participate in the wrong, but who, in the event of his servant's negligence, had the fault imputed to him, would be an action in case, while the action against the servant would be in trespass; and these actions could not be joined. This is largely responsible for the confusion apparent since the distinction between actions in trespass and actions in case has been abolished in most jurisdictions, a few courts still holding to the old rule that master and servant cannot be joined in an action of tort where the master's only responsibility is under the doctrine of respondeat superior, while most courts permit them to be sued jointly, either because they regard them as joint tort feasors, or for some other reason."

There then follow cases discarding the common law distinction from the courts of the United States—including the Supreme Court—and the highest courts of Alabama, Connecticut, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Jersey, New York, North Carolina, North Dakota, Oregon, South Carolina, Washington, West Virginia and Wisconsin; whilst on page 1062 of 98 A. L. R. the annotator lists some inferior Federal courts and opinions from Colorado, and an earlier case from Connecticut (but later overruled) the District of Columbia, an early but later overruled case from Illinois, Maine, Massachusetts, New Hampshire, Ohio, Pennsylvania and Vermont which apparently continue to hold that the master and servant cannot be joined in one action as joint tort feasors, where the master is liable only for derivative negligence, under the doctrine of respondeat superior. But, whether in such jurisdictions the common law procedure has or not been abolished and superseded by provided Code proceedings does not

appear. The case in 98 A. L. R., which the annotation referred to follows, is one from the Supreme Court of Vermont (George W. Raymond v. Salvatore Capobianco, 107 Vt. 295, 178 A. 896, 98 A. L. R. 1051), in which that court held that the master and servant could not in such circumstances be joined in one action by the plaintiff, and that plaintiff should elect which one of the two he would proceed against, after which his election would bar him from later proceeding against the other, or others only derivatively liable.

However, this court, as we have seen, in the domestic cases listed in the annotation referred to—and also a majority of other courts of the Union—discard the theory of the Vermont court, and those adopting the same view, and permit the joinder of a master, whose liability is derivative only through the doctrine of respondeat superior with his negligent servant, as though they were technical joint tort feasors. The latter approved practice, according to our view, is tantamount to saying that so far as the injured plaintiff is concerned both master and servant are and may be treated as joint tort feasors for all purposes in proceedings to obtain compensation for injuries sustained by him. It is conceded (and for which reason we will not cite authorities in support thereof) that in case of actual tort feasors the victim of their joint tort may sue them jointly or severally, and that neither of them can escape liability until *satisfaction* has been obtained from one or more of them. That rule appears to be so universal as not to require fortifying precedent or authority. If that may be done in the case of actual tort feasor, logic furnishes no adequate reason why the same consequence should not follow when and where the injured plaintiff is permitted, under the practice of the forum, to treat and proceed against each and all of the parties liable to him, under the same law, as if they were actually joint tort feasors. If he is given the right—as is true in such jurisdictions, including this one—to treat and proceed against them as joint tort feasors at the commencement of his legal proceedings to obtain relief, we can conceive of no logical reason why his right to so treat them continuously thereafter until relief is obtained by satisfaction as much so in the one case as in the other. In other words, there is no reason why plaintiff, when given the right to join all of those who are liable to him for the negligence com-

plained of—although upon different grounds—as if they were joint tort feasors, may not continue to treat them as such throughout the proceedings until satisfaction is obtained, the same as could be done if they were technical joint tort feasors.

That the distinction is only technical is also clearly pointed out by Mr. Labatt in his excellent work on Master and Servant, Volume 7, page 7719. In the immediately preceding page the author points out the conflicting lines of decisions supra, upon the question of joint liability of the master with his servant, and on the page referred to (7719) he says: ''The conflict in the decisions begins where the master does not participate in the negligent or wrongful act of the servant, his liability resting upon the doctrine of respondeat superior, or upon statute. It has been held that the act complained of is, for this reason, not joint, and that the master and servant must therefore be pursued separately. The basis for this distinction is purely technical, and arose before the adoption of the reformed procedure. Under the old forms, the remedy against the master who did not command or participate in the wrong, but who, in the event of his servant's negligence, had the fault imputed to him, would be an action in case, while the action against the servant would be in trespass; and these actions could not be joined. One reason which has also been urged against the nonjoinder of master and servant in this class of cases is that the judgment would be against them jointly as joint wrongdoers, and consequently that the master, if he alone should satisfy the execution, could not call on the servant for reimbursement or contribution. This point was emphasized in the leading case in Massachusetts on the subject, and has had considerable influence on the decisions. There is, however, no real difficulty in this situation, for the master's right to contribution may be preserved, although the master and servant are sued together. Here again the objection to the joinder is technical.''

On page 7722 it is also said that: ''The preponderance of authority in all jurisdictions is in favor of the right to join master and servant so as to proceed against them in a single action, although the master's liability is based on the doctrine of respondeat superior, and not upon any personal nonfeasance or misfeasance.''

Those statements as to the conditions of the law upon the question under consideration, as made in the annotation supra, and by Mr. Labatt, is approved by all other authoritative texts, and for which reason we do not deem it necessary to list them here. The inserted excerpts disclose that the only reason advanced by the courts denying the right of joinder of master and servant in the same action when the former is liable only derivatively under the respondeat superior doctrine is that, since there is no contribution among wrongdoers the master in such an action having been sued as a joint wrong-doer with the servant would be deprived of his action against the servant for the violation of his duty as such, and for which he would be liable to his master when the latter had no actual participation in the commission of the tort. But that objection, as we have seen, is effectually answered by Mr. Labatt when he says in the excerpt supra that ''There is, however, no real difficulty in this situation, for the master's right to contribution may be preserved, although the master and servant are sued together. Here again the objection to the joinder is technical.''

The discussion of the instant phase of the question could be greatly lengthened, as we have said, by the citation of other authorities to the same effect, but such a course could add nothing to the soundness of the reason underlying the doctrine as approved by the authorities referred to, including this court. But there remains for consideration the further question of election relied on by learned counsel for defendants, and which seems to have been followed by the trial court in rendering its judgment, although no written opinion was filed. The doctrine of election of remedies as applicable to the enforcement of contractual rights, growing out of the relationship of principal and agent where the principal is undisclosed by the agent, does not prevail in actions against tort feasors who are jointly liable as such, or who may be proceeded against jointly as such. Therefore, many of the cases cited by learned counsel for plaintiff have no application here. Prominent among the cited case involving contractual rights is Phillips v. Rooker, 134 Tenn. 457, 184 S. W. 12. It was expressly stated in that case that the doctrine therein announced with reference to contractual rights growing out of the relationship of principal and agent would not apply to

tort actions arising from the relationship of master and servant. If, therefore, plaintiff in seeking relief for injuries sustained by him through the commission of a tort may join in one action all those who are made liable to him under the law we can conceive of no reason for, nor have we been able to find any decision, or any text, visiting upon him the consequence of a final election should he fail to join all of those who might have been joined. That question is treated by Mr. Cooley in his excellent work on "Torts," fourth edition, Volume I, page 258, Section 82. On that question the learned author says, on page 259: "Whatever may have been the reason for proceeding at first (in tort actions) against less than the whole, it is conceded on all sides that a previous suit against one or more is no bar to a new suit against the others, even though the first suit be pending, or have proceeded to judgment when the second is brought. The second, or even a subsequent suit may proceed until a stage has been reached in some one of them at which the plaintiff is deemed in law to have either received satisfaction, or to have elected to rely upon one proceeding for his remedy to the abandonment of the others."

He then proceeds to cite some English cases holding that if the first or any prior suit against one or more of the wrong-doers has proceeded to judgment, then plaintiff's election to not sue the others has ripened into a final and irrevocable election. Following such references the author points out that the English doctrine on what is necessary to complete an election has been followed by only the courts of Virginia and Rhode Island, and·that "It was expressly disapproved by the Supreme Court of New York, when presided over by Chief Justice Kent, and was pronounced by him to be a departure from the earlier English decisions." He then says, on page 261, of the volume referred to, that the departure made by Judge Kent from the English doctrine "has since been generally followed in this country," and which is " that the party injured may bring separate suits against the wrong-doers, and proceed to judgment in each; *and that no bar arises as to any of them until satisfaction is received.*" (Our emphasis.)

It is then stated, in substance, that the plaintiff in such an action may proceed successively against all those who under the practice are jointly liable to him, but

that he can claim or enforce only one *satisfaction* for the same injury, and though he obtains separate judgments against several, he may proceed to enforce the collection of whichever one he chooses, but his successful collection of the judgment he seeks to enforce will constitute a bar to any procedure as against the others, and which is tantamount to a declaration that the election is *not* complete until satisfaction is had.

The learned author then continues, saying: "And such election, followed by actual satisfaction of that particular judgment, will preclude the plaintiff from proceeding against either of the other defendants upon the judgments recovered against them, except for the costs of the respective cases, which he may enforce the collection of by execution." On the next page it is pointed out that in some jurisdictions the election is completed so as to create a bar to any proceedings against any of the others jointly liable to plaintiff when a judgment is *obtained* against one of them in a separate action and an execution is raised thereon; but it is shown that the courts so holding are clearly in the minority and the rule they announce is not supported by either logic or reason so far as we are able to discover. The raising of an execution on a judgment is only one step in the procedure to obtain *satisfaction,* and until satisfaction is obtained it is difficult to conceive why that particular step should be given any more potency in perfecting the election than any other step traveled by the plaintiff from the beginning of his action in his effort to obtain satisfaction.

A comparatively recent domestic case, in which the two major propositions supra involved in this case were presented, is Myers' Adm'x v. Brown, 250 Ky. 64, 61 S. W. (2d) 1052. Those two propositions are (a) the right of plaintiff to join in one action both master and servant—although the latter is only derivatively liable, and (b) the effect of prosecuting his first action against only one of them to judgment on his right to maintain a later action against the other one. Both of such rights were at least impliedly upheld by us in that case, although the decisive question there involved was that of res adjudicata. The latter doctrine was therein held by us not to apply, and which was based on cases antedating that of Illinois Central Railroad Company v. Applegate's Adm'x, 268 Ky. 458, 105 S. W. (2d) 153, followed by

that of Blue Valley Creamery Company v. Cronimus, 270 Ky. 496, 110 S. W. (2d) 286. The Myers case arose under what has come to be known as the "Family Purpose" doctrine, which the opinion says is based upon the relationship of master and servant. The facts in it were the reverse of those in this one, in that the master was alone sued in plaintiff's first action, which proved to be abortive in obtaining satisfaction by plaintiff, and his later suit was filed against the servant who, among other defenses, interposed the prior judgment in the separate action against the master. We denied that defense, basing it exclusively upon our fromer opinions preceding the Applegate and Cronimus cases supra, both of which were rendered since the Myers case was decided. However, neither of the two later and overruling opinions—by implication or otherwise—expressed or attempted to express any opinion on the two major questions herein dealt with, since they were not presented in either of them. So that, the implied approval in the Myers opinion of the two questions of practice herein involved as appears in the above inserted excerpts was neither questioned nor in any manner touched upon in either of the two later opinions. Therefore, learned counsel for defendants are mistaken, as we conclude, when, in discussing the effect of the Myers case they say that it "has lost its authority in view of this Court's subsequent analysis and determination in the above two (Applegate and Cronimus) cases."

We conclude from the foregoing and from reason that the election is not complete so as to create a bar to a later separate action against another who is also liable to the plaintiff for the same cause of action until *satisfaction* has been made by someone or more of those whom the law makes responsible for the damages sustained. That conclusion, besides being supported by a majority of courts is, as we have intimated, also supported by logic and justice. It follows that the court erred in overruling the demurrer to the third paragraph of defendants' answer, and in dismissing the petition upon plaintiff's refusal to amend.

Some reference is made in briefs to the question as to whether or not the defendants are bound under the doctrine of *res adjudicata* by the judgment rendered in the action against their servant. It is clear that they, in the circumstances of this case, would be relieved from

liability under that doctrine if there had been a verdict in favor of their servant in the action against him, and which we so held in the Applegate and Cronimus cases supra, in which we, as above stated, overruled a contrary doctrine theretofore followed in this jurisdiction, but which was discarded long prior thereto by practically every other court.

But the reason for the declaration and application of that rule in such circumstances, whereby one not a party to the action may rely on a verdict rendered therein in a later action filed against himself, is entirely absent where the verdict in the first action was against the defendant therein. To hold that the judgment in such latter case should be given res adjudicata effect so as to bind one only *derivatively* liable in a later action against him would destroy the principal ground upon which the doctrine of res adjudicata is founded, which is, that the one so estopped must have been an actual party to the litigation wherein the estopping judgment was rendered, or he must have sustained a privy relationship to one of the actual parties thereto.

The Myers case supra held that no such privy relationship exists between principal and agent or master and servant in tort actions growing out of the sole negligence of the servant. Therefore, in this case the instant defendants, not having been parties to the first action of plaintiff against their servant, either actually or through privy relationship to their servant, it follows that the judgment rendered against the latter is not res adjudicata as against them. But the reason for that conclusion is wanting where the alleged guilty servant was acquitted in the first action, since in that case the very foundation of derivative liability of the principal was adjudicated in his favor as well as that of his servant in the action against the latter alone, and to which action the injured plaintiff was a party. According to what we have hereinbefore found as the correct rule the alleged estoppel now under consideration is conceded by all parties not to be available where the parties are *actual* joint tort-feasors, and there can be no reason to say, in view of what we have hereinbefore pointed out, that a different rule should apply where one of the defendants who may be jointly sued with the others is liable, if at all, only derivatively.

The distinction is clearly pointed out by Mr. Free-

786

man in his work on Judgments, Section 469, which is referred to by us with approval in the Myers opinion. As pointed out by the inserted text supra, the instant defendants, if eventually held liable herein, may adjust their rights as between themselves and their guilty servant according to the principles of law governing such questions. The common law distinction between actions against actual joint tort-feasors, and where one or more of them is only derivatively liable, with different consequences flowing from proceedings against each class, was referred to and discarded in the Myers opinion when it said:

"But the rule as to joint tort-feasors seems, at least in this state, to fix a different rule of public policy, and it is difficult to understand why in the case of principal and agent or master and servant a rule of public policy differing from that in joint tort-feasors should be adopted." That excerpt, as we conclude, fortifies the ultimate conclusion reached in this case on both propositions of *election* and *res adjudicata* estoppel.

Wherefore, the judgment is reversed, with directions to sustain the demurrer to the third paragraph of the answer, and for proceedings consistent with this opinion; the whole Court sitting.