John P. MARANGE and wife, Pauline Marange, Appellants,

v.

John MARSHALL, Appellee.

No. 134.

Court of Civil Appeals of Texas.

Corpus Christi.

March 31, 1966.

Rehearing Denied April 28, 1966.

Edwards & DeAnda by James DeAnda, Corpus Christi, for appellants.

Lewright, Dyer & Redford by J. M. Burnett, Corpus Christi, for appellee.

NYE, Justice.

This is an appeal from a judgment rendered in the district court of Nueces County, which sustained a motion filed by defendant for summary judgment. Plaintiffs have perfected their appeal to this court.

The facts, stipulated to by the parties, show that in this case appellants, John P. Marange and wife, Pauline Marange, brought suit for damages against John Marshall for personal injuries sustained by Mrs. Marange, when a car in which she was riding with her husband, John P. Marange as driver, was in a collision with a pick-up truck driven by Marshall. Marshall was operating the pick-up truck in the usual course of his employment as an employee of Lew Williams Chevrolet, Inc.

It appears that the present action was brought against Marshall only, with alle-

gations of negligence of Marshall being duly set forth. The date of the collision was July 31, 1961, in Corpus Christi, Nueces County, Texas.

Prior to the filing of this suit, appellants, again as plaintiffs, had instituted a suit under the doctrine of respondeat superior against appellee's employer, Lew Williams Chevrolet, Inc., based on the same accident. This first suit had gone to trial before a jury, and as a result of the verdict, judgment was rendered for the plaintiffs, appellants here, for the damages found. Plaintiffs appealed; however, the judgment was affirmed. Marange v. Lew Williams Chevrolet, Inc., 371 S.W.2d 900, Tex.Civ. App., 1963, ref. n. r. e. The full amount of the judgment was paid into the registry of the court and was also tendered in cash to them, but was refused by the appellants. This suit against the employer's servant followed.

The motion for summary judgment was predicated on the proposition that a final judgment in the appellants' favor in the prior suit against the appellee's employer based as was this suit on the negligence of appellee Marshall, and on the doctrine of respondeat superior and arising from the same transaction, was a complete defense to the present case.

In other words, appellee contended in the district court and in defense of this appeal that the prior action pursued by appellants to final judgment after a verdict, in the sum of $3,250.00 and affirmed on appeal, completely bars the second action against the employee, Marshall, appellee herein, notwithstanding the judgment amount and interest being both tendered to the appellants and paid into court, was not accepted by the appellants. We agree.

It appears by the admission of counsel for both parties that the precise question has not been decided by the Texas courts, and our own search of the authorities among the Texas decisions does not disclose a determination has ever been made in this jurisdiction. In fact, the briefs of diligent counsel disclose but few decided cases even from other courts than in Texas where the courts have been called upon to determine the issue presented here.

The single problem in this appeal seems to raise a number of questions, all related to its final disposition.

1) Does the prior case present a situation where the rule of res judicata must apply to bar the second or present action?

2) Is there an estoppel by the prior judgment that should dictate affirmance of the trial court's ruling on the motion for summary judgment?

3) Was there a binding election by the appellants as to parties defendant in the prior action, that precludes a later suit by the same plaintiffs wherein only the employee is named as party defendant?

4) Is there a public policy that forbids a second trial of the issues as to negligence of the employee Marhall, absent contributory negligence?

5) Do the rules relating to the cause of action against joint and several tort feasors apply in the relationships incident to the doctrine of respondeat superior?

6) Have the appellants had their day in court in the prior action?

Consideration of such questions seems to merge into a single question: Does the prior action pursued to judgment, with the full amount of the judgment tendered and paid into court although not accepted, bar the present action?

█ Here we have a case with facts undisputed that must be decided upon the well known doctrine of respondeat superior. In Texas, as in most states, appellants could have sued jointly in the prior case, both the master and the servant. The doctrine

of respondeat superior presupposes that the employer is responsible for the acts of his employee, acting in the scope of his employment, where negligence of the employee is shown to have been the proximate cause of the occurrence. Judgment is allowed against the employer, not because of an overt negligent act of the employer because he committed no wrongful act, but because of a recognized legal fiction, " * * * Let the principal or master answer * * * " "Let the superior respond * * * ". The principal is liable for the act of his servant or agent performed within the scope of his employment. It is derivative liability. The employer and employee composed one entity, for one wrongful act causing injury to one person, usually on one date in one episode.

> " * * * where one acts through the agency of another, then, in legal contemplation, he is *himself acting* so as to make him responsible for the acts of his agent." Gatz v. Smith, 205 S.W.2d 616, 617, Tex.Civ.App.1947, ref.

The history of the development of the doctrine is too well known and recognized to justify citation. Students may refresh the history and the development of the doctrine in the writings of legal scholars, e. g., Oliver Wendell Holmes, Jr., late Justice of the Supreme Court of the United States. He said:

> "A baker's man, while driving his master's cart to deliver hot rolls of a morning, runs another man down. The master has to pay for it. And when he has asked why he should have to pay for the wrongful act of an independent and responsible being, he has been answered from the time of Ulpian to that of Austin, that it is because he was to blame for employing an improper person. If he answers, that he used the greatest possible care in choosing his driver, he is told that that is no excuse; and then perhaps the reason is shifted, and it is said that there ought to be a remedy against some one who can pay the damages, or that

such wrongful acts as by ordinary human laws are likely to happen in the course of the service are imputable to the service." The Common Law by Oliver Wendell Holmes, Jr., 49th Printing, "Early Forms of Liability" page 6, permission granted by publisher.

Justice Holmes pointed out that certain customs, beliefs or needs of a primitive kind establish a rule or a formula. However, in the course of centuries the custom, belief or necessity disappears but the rule remains, although the reason which gave rise to the rule has been forgotten. Today the doctrine seems to have its origin in, and is dictated by,

> "considerations of public policy and the necessity for holding a responsible person liable for the acts done by others in the prosecution of his business, and it is bottomed on the principle that he who expects to derive advantage from an act which is done by another for him must answer for any injury which a third person may sustain from it, and also on the principle that a duty rests on every man, in the management of his own affairs, whether by himself or by his agents or servants, so to conduct them as not to injure another, and that, if he fails in that duty and another is thereby injured, he shall answer for the damage." 77 C.J. S. Respondeat Superior, p. 318.

John P. Marange, the appellant herein, invoked the doctrine of respondeat superior in the first suit that permitted him to recover a judgment against appellee's employer Lew Williams Chevrolet, Inc., based upon the negligent conduct of the appellee herein.

Appellee contends the appellants are barred by the rule of res judicata. Judicial definition of the rule refreshes and sheds light on its application.

The general principle, announced in numerous cases, is that a right, question, or fact, distinctly put in issue and directly de-

termined by a court of competent jurisdiction as a ground of recovery or defense cannot be disputed in a subsequent suit between the same parties *or their privies,* or with another so identified in interest with such person that he represents the same legal right, the same question, the same particular controversy or issue which has been necessarily tried and finally determined upon its merits by a court of competent jurisdiction in a judgment in personam in a former suit. United States v. California Bridge & Construction Co., 245 U.S. 337, 38 S.Ct. 91, 62 L.Ed. 332. See Edinburg Irr. Co. v. Ledbetter, 247 S.W. 335, Tex.Civ. App.1922, modified on other points, 286 S. W. 185, Tex.Comm.App.1926, quoting from Southern Pac. R. Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355 (1897).

Speaking of the effect and meaning of the rule of res judicata the Supreme Court said, in Houston Terminal Land Co. v. Westergreen, 119 Tex. 204, 27 S.W.2d 526 (1930) reversing Tex.Civ.App., 285 S.W. 927:

"It is a finality as to the claim or demand in controversy, concluding parties and those in *privity with* them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * *" (Emphasis ours.)

In 38 Tex.Jur.2d § 240, page 491, it is stated:

"Every act of negligence and trespass committed by a servant while acting within the scope of his employment and in furtherance of the master's business is chargeable and imputed to the master and in fact is the act of the master."

In the case of Canin v. Kesse, 20 N.J.Misc. 371, 28 A.2d 68, wherein the court was called upon to determine whether a plaintiff, who first brings an action against the master for the negligent act of the servant and fails on the merits may bring a second action against the servant for the same negligent act, the court concluded that the plaintiff may proceed against either one or both. He may recover from only one. By whichever path he elects to travel the issues which he must meet are the same. If the plaintiff recovers it is either based upon the negligence of the servant and the plaintiff's own freedom from contributory negligence or if the suit is against the master, liability would be purely of a derivative or a secondary character on the theory of respondeat superior. The Court said:

"In the case of Wolf v. Kenyon, 242 App. Div. 116, 273 N.Y.S. 170, 171, a case identical in facts to the one at Bar, the Court said: 'The prior judgment is a bar to subsequent litigation of the same matters between the same parties or their privies. "What is a privity? As used when dealing with the estoppel of a judgment, privity denotes mutual or successive relationship to the the same right of property." Bigelow v. Old Dominion Copper Mining and Smelting Co., 225 U.S. 111, 128, 32 S.Ct. 641, 643, 56 L.Ed. 1009, Ann.Cas.1913E, 875. Strictly speaking, master and servant are not in privity, but, where the relationship is undisputed and the action is purely derivative and dependent entirely upon the doctrine of respondeat superior, it constitutes an exception to the general rule. Nor does the lack of mutuality affect the exception.

" ' "It is a principle of general elementary law that the estoppel of a judgment must be mutual * * *." ' "

■ The appellee was not a party in haec verba in the prior case, but in accordance with these and many other authorities, he was in actuality as though he was a party defendant in the prior action. It was his negligence that supported the jury verdict in the prior action. We therefore conclude that res judicata urged in the court below was a part of the structure of the bar that protects the appellee in this appeal, similar

in effect to the rule of estoppel by judgment. Technical discussion of estoppel by judgment merges into the rule of res judicata and, in the interest of brevity, we only pause to observe that in our opinion the prior judgment, * * * where the relationship was undisputed and the action was purely derivative and entirely dependent upon the doctrine of respondeat superior, * * * estops the appellants from urging their case in a second time by the pretext of avoiding the rule by naming an adventitious different defendant, whose negligence proved and supported the prior judgment.

"The doctrine of *res adjudicata or estoppel by judgment* operates to preclude a litigant from raising an issue which has been previously raised and decided against him in a suit between the same parties by a court of competent jurisdiction." Baronian v. Sealy Oil Mill & Mfg. Co., 9 S.W.2d 292, Tex.Civ.App.1928, writ dismissed, citing Old River Rice Irr. Co. v. Stubbs, Tex.Civ.App., 168 S.W. 28. (Emphasis ours.)

■ Was there a binding election by the appellants when they brought the prior action, that bars them from making a further election as to parties defendant? When the prior action was filed, appellants had their choice of parties defendant, the employer, the employee, or both. Since, however, both were in privity, to the extent stated above, their selection in the prior action was both binding and exclusive, when once made and final judgment obtained and satisfaction legally tendered. It was optional with them which one, or the other, or both, but did not operate to reserve to them a future action as to the one not first selected as party defendant under these facts. McNamara v. Chapman, 1923, 81 N.H. 169, 123 A. 229, 31 A.L.R. 188. Public policy supports the reasoning of the several rules of law, that the prior action in this case bars the second action. Public policy demands that this be so, because it is only fair and right and just, and avoids a multiplicity of suits. Were it otherwise, the courts could be clut-

tered with retrials and there would be no finality to litigation. When a rule of law appears to exemplify public policy it is the duty of the court to preserve and express it.

"Arbitrary rules which were originally well founded have thus been made to yield to changed conditions, and underlying principles are applied to existing methods of doing business. The tendencies in most of the American courts are in the same direction." Anchor Electric Co. v. Hawkes, 171 Mass. 101, 104, 50 N.E. 509, 511, 41 L.R.A. 189, cited with approval by former Justice of the United States Supreme Court, Benjamin N. Cardozo in "The Nature of The Judicial Process." The eminent jurist concludes that:

"The field is one where the law is yet in the making or better perhaps in the re-making. We cannot doubt that its new form will bear on impress of social needs and values which are emerging even now to recognition and to power."

We doubt not that the courts of Texas many times have thus confirmed or reconfirmed such public policy.

Much of the position of the appellants in this case is based upon the untenable assumption that here the employer, and the employee Marshall, were joint tort feasors, and that for such reason, the appellants may pursue them one at a time, if need be, until they have urged their case separately against all such so-called tort feasors. This theory can have no legal recognition in the doctrine of respondeat superior and is rejected.

As we have seen, all parties agree that the prior suit was brought under the doctrine of respondeat superior. Appellants contend that they may pursue their cause of action against one joint feasor, although they have an unsatisfied judgment against the other tort feasor. While there no doubt are decisions of other states that loosely, perhaps speak of master and servant as

joint tort feasors, we do not believe the Texas courts have ever taken such position and we reject it as determinative in this case. In 55 Tex.Jur.2d, p. 636, it is said:

"Two or more persons become joint tortfeasors when they participate in concerted action to commit a common tort and accomplish their purpose."

In respondeat superior there is one entity, one "person", although several people might be involved, but master and servant constitute one and the same, with derivative relationship. As was stated in Bowles v. Creason, 159 Or. 129, 78 P.2d 324, at 336:

"The principle of law known as 'respondeat superior' is a means whereby one person may be liable for another's tort even though the two were not joint feasors."

To sustain appellants' position and to permit them to bring a second suit against the master's subordinate would in effect permit them to have "two days in court". In the first suit a reading of the opinion by Justice Barrow, 371 S.W.2d 900, Marange v. Lew Williams Chevrolet, Inc., there is no doubt in our minds that the appellants have had their day in court.

"It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, * * *." 25A C.J.S. p. 476 "Day in Court".

In fact, it is well that we recall the possible origin of the maxim, as did the court in In Re Cumberland Power Co., 147 Tenn. 504, 249 S.W. 818, 821, 147 Tenn. 504, 25A C.J.S. p. 476, Note 50(4):

"It is fundamental that every man have his 'day in court,' and we have no doubt that an appropriate procedure exists, for, as quaintly observed by an ancient English judge, in the case of Rex v. Mayor of Oxford, Palmer, 453: 'The laws of God and man both give the party an opportunity to make his defense, if he has any. I remember to have heard it observed by a very learned man upon such an occasion that even God himself did not pass sentence upon Adam, before he was called upon to make his defense. "Adam," says God, "where art thou? * * * Hast thou eaten of the tree whereof I commanded thee that thou shouldest not eat?" And the same question was put to Eve also.'"

See also 16A C.J.S. Constitutional Law § 569(4), at page 571, § 709 a, pages 1210, 1211, and § 567 b, p. 541. See Humble Oil & Refining Co. v. Fisher, 152 Tex. 29, 253 S.W.2d 656 (1952). Indeed, we pause to affirm such a right, but this does not extend itself to mean two days, or two half days. The appellants had their "day in court" in the former trial, which involved the same accident, the same acts of negligence, the same injuries, the same damages, and actually the same tort feasor appellee Marshall, who had been called to the witness stand by appellants as an adverse party.

But for the question herein decided that does not appear to have engaged the attention of the Texas courts heretofore, we might bruskly turn aside and reject the position taken by the appellants. In a well and carefully prepared opinion with facts almost identical to the case at bar,[1] the New Hampshire Supreme Court in the case of McNamara v. Chapman, supra,

1. The plaintiff was injured by an automobile driven by the defendant who was the owner's servant. The owner was not present at the time of the accident. The plaintiff had already recovered a judgment for his injuries against the master, and in the second action sued the servant for the same injuries. It was held that the judgment against the solvent master for the tort of his servant was a bar to a suit brought by the same plaintiff against the servant for the same cause of action although the prior judgment had not been satisfied, but complete satisfaction had been duly tendered plaintiff.

firmly and in thoughtful and well-reasoned language, rejects a similar position taken by the appellants here. The court in Mc-Namara held, that the second action filed against the employee alone could not be maintained, by reason of the prior judgment. This decision as a leading case is reported in 123 A. 229, 31 A.L.R. 188, and has been cited with approval at least in ten states.

The appellants elected to treat the master and servant as one and recovered a judgment from the master, full payment of which has been duly and legally tendered them, and refused by them. They could have disregarded the relationship and sought recovery from the servant. They could have treated the servant's act as that of the master. But having so elected, with knowledge of the facts, they cannot proceed to judgment a second time. It is our view that the prior action bars the subsequent action against the appellee. The decision of the trial court granting the motion for summary judgment should be and is affirmed.

Affirmed.

SHARPE, Justice (concurring).

## ON MOTION FOR REHEARING

I concur in affirmance of the judgment for the reasons stated in this opinion. In my view, some of the contentions of the parties merit additional consideration and discussion.

The question for decision is as follows: May appellants maintain a second action against the servant for the same injuries resulting from the same collision after they have successfully prosecuted the same cause of action against the master based upon respondeat superior and have recovered a final judgment in the former action, the full payment of which has been legally tendered to appellants but refused by them?

I believe that such question is correctly answered in the negative. I base my affirmance of the judgment solely on the grounds that appellants have made an election of remedies which the record establishes to have been completed and that, in effect, there has been legal satisfaction of appellants' judgment against the master. Appellants elected to first pursue their cause of action against the master. They have obtained a final judgment for their damages and could have full payment thereof. I believe that a collectible judgment in this situation completes the election made by appellants and bars a second suit against the servant. This appears to me to be the basic and controlling holding in the case of McNamara v. Chapman, 1923, 81 N.H. 169, 123 A. 229, 31 A.L.R. 188, which I believe to be highly persuasive on the question presented here, which has not been squarely decided by our Texas Courts.

One of the most significant factors here is that appellants have recovered a collectible judgment. In the case of Granquist v. Crystal Springs Lumber Co., 1941, 190 Miss. 572, 1 So.2d 216, the court placed emphasis upon such factor and cited *McNamara* with approval in holding that a collectible prior judgment against the servant bars a second suit against the master for the identical injury.

However, if the record did not show that appellants had reduced their cause of action to a collectible judgment, I would hold that the second action against the servant is not barred. In my view, a plaintiff is not finally bound by an uncollectible judgment against the master, but may, in such event, pursue his cause of action against the servant who is also liable to him. The plaintiff's election to first recover judgment against the master is not complete until satisfaction or its equivalent is had. But where, as here, full payment of the judgment in the prior action has been legally tendered, I would hold that the remedy elected by appellants has been completed and satisfaction has been had so as to bar the second suit against the servant.

I agree with appellee's position that here the master and servant are not joint tort-feasors. It is important to observe the distinction between persons who are true joint tort-feasors, on the one hand, and those who may be held liable jointly or severally under the doctrine of respondeat superior, on the other. Where, as here, the master has not independently participated in the tort, he is liable only derivatively while the servant is liable directly to the plaintiffs. The liability of the master for the tort of the servant is not a contested issue in this case.

Appellants cite as the Texas cases most analogous to the instant suit Pearson v. Jacobs, Tex.Civ.App., 293 S.W.2d 543 (1956, wr. ref., n. r. e.) and Hunt v. Ziegler, Tex.Civ.App., 271 S.W. 936 (1925, affirmed Tex.Com.App., 280 S.W. 546, 1926). In Pearson v. Jacobs, supra, the plaintiff filed a second suit against the servant after first having recovered judgment and payment thereof from the master. The trial court dismissed the second suit against the servant after ascertaining that the first judgment had been paid. The Court of Civil Appeals affirmed on three grounds: (1) That where there has been a judgment against one of two or more joint tort-feasors, followed by an acceptance of satisfaction, all other tort-feasors are thereby released, and the judgment and satisfaction may be successfully pleaded by them to the maintenance of the same or another suit by the same plaintiff involving the same cause of action, citing Hunt v. Ziegler, supra; (2) That since the second suit was solely for exemplary damages based upon alleged gross negligence of the servant, there can be no recovery of such exemplary damages in the absence of a recovery of actual damages therein; and (3) That the law does not permit the recovery of actual damages against the principal and only exemplary damages against the agent. In my view, the Court incorrectly referred to the master and servant as joint tort-feasors. However, the judgment affirming the dismissal by the trial court was still correctly premised upon the other two stated grounds, and, in my opinion, would also have been correctly based upon the first ground if the court had referred to the master and servant as being jointly liable, instead of designating them as joint tort-feasors.

In Hunt v. Ziegler, supra, the plaintiffs sued the servant after having first filed suit against his master under the doctrine of respondeat superior, had settled their case with Court approval and accepted payment of the judgment. The writ of error was granted upon a practice question which was discussed by the Commission of Appeals and the opinion of the Court of Civil Appeals was approved on the merits of the case. Hence, the discussion here will be in terms of the opinion of the Court of Civil Appeals. The second suit against the servant was based upon the theory that the plaintiffs were damaged far in excess of the amount awarded by the judgment and collected from the master, and that they were entitled to recover an additional amount against the servant after allowing credit for the amount theretofore paid by the master. The trial court, based upon a jury verdict, rendered judgment in favor of plaintiffs for such additional amount. The Court of Civil Appeals reversed and rendered judgment that plaintiffs take nothing, holding that the second action against the servant was barred. The Court recognized the rule that "where there has been a judgment against one or two or more joint tort-feasors, followed by an acceptance of satisfaction, all other tort-feasors are thereby released, and the judgment and satisfaction may be successfully pleaded by them to the maintenance of the same or another suit by the same plaintiff involving the same cause of action." The plaintiffs contended that such rule was applicable only to joint tort-feasors and not to other wrongdoers such as the master and the servant in that transaction; that the master, if liable at all, was only constructively or "secondarily" so, while the servant was the active and only wrongdoer, and

the master could have exacted contribution, even full indemnity, of the servant. At pages 938–939 of the opinion, the Court said:

"These contentions, if correct, do not occur to us to furnish any reason for excluding the principle stated from application to the case presented here. The distinction sought to be drawn is purely superficial; it has no effect whatever upon the essential and controlling element of identity of causes of action.

"The rule is applied to joint tort-feasors because of the fundamental fact that there is but a single injury in itself and of itself indivisible, and constituting an indivisible cause of action, for which both in law and good conscience there can be but one satisfaction; and when that satisfaction is made by one of the joint tort-feasors, or by any person (Lovejoy v. Murray, 3 Wall. 1, 18 L.Ed. 129), it has the effect of releasing all others who may be jointly, or jointly and severally liable.

"So, in the case at bar, the situation is in principle precisely the same. The Glass Company, the master, if liable at all, was constructively so because of its responsibility for the act of Hunt, its servant; and if the latter was liable, he was so because of his individual responsibility for the identical act. Both were tort-feasors, and whether jointly liable or not appellees had a cause of action against them, severally, it is true, but only upon one cause of action, and it was an indivisible one. Upon that cause of action appellees might have sued both tort-feasors in the same action, and recovered a joint and several judgment against them, but the amount could not have been apportioned between them, for the very obvious reason that the cause of action was single and indivisible. Or appellees might have maintained a suit against each of the tort-feasors at the same time, and even prosecuted each to judgment, but in such case the satisfaction of one judgment would surely have had the effect of releasing the other. Here the aggrieved parties successfully prosecuted their single cause of action against one of the tort-feasors, and received and accepted satisfaction in full of the judgment. That was satisfaction for the entire injury, for the single cause of action, and although it moved from only one of the wrongdoers, no foundation remained for any claim against the other. The cause of action was extinguished. We think the authorities are as one in support of this holding." (Citing many authorities.)

It should be noted in Hunt v. Ziegler, while the court first discussed the rule concerning joint tort-feasors, that the master and servant were referred to as only "tort-feasors" and in holding the second suit against the servant barred by the judgment and payment in the first suit the court continued to describe them as "tort-feasors" rather than "joint tort-feasors".

When we consider that the master and servant are not joint tort-feasors, although some cases have incorrectly so referred to them, I believe that, by analogy, the cases of Pearson v. Jacobs, supra, and Hunt v. Ziegler, are favorable to appellee rather than appellants.

Another case relied on by appellants is Sherwood v. Huber & Huber Motor Exp. Co., 1941, 286 Ky. 775, 151 S.W.2d 1007, 135 A.L.R. 263. In that case the plaintiff first sued the servant for injuries in an automobile collision and recovered a judgment. Execution was issued and returned "no property found" Thereafter, the plaintiff filed suit against the master. The trial court overruled a demurrer filed by plaintiff directed to a plea urged by the master that plaintiff had made an election by first pursuing her cause of action against the servant and that the second suit was barred. The Court of Appeals reversed with directions to sustain the demurrer. Relying principally upon equitable principles, the appellate court held, in sub-

stance, that a final judgment in the prior action which could not be satisfied through execution or otherwise amounted to no judgment at all, and would not bar the second action against the master. In *Sherwood,* the court did not hold that in the case of master and servant the plaintiff could pursue her cause of action against the servant and later against the master if a legal tender of the amount of the first judgment had been made. The Court also did not hold that the plaintiff could have refused to accept payment of the first judgment and still assert a cause of action in a later suit against the master. It is evident that by the word "satisfaction" the Court meant "payment" or "collection". At page 1012 of the opinion, the Court said:

> "We conclude from the foregoing and from reason that the election is not complete so as to create a bar to a later separate action against another who is also liable to the plaintiff for the same cause of action until *satisfaction* has been made by someone or more of those whom the law makes responsible for the damages sustained."

I do not believe that *Sherwood* is authority for appellants' position here, and it appears to me that had the judgment debtor in the first suit made a valid legal tender of the amount of the judgment, the Court would have ruled differently.

Appellants also rely upon rules announced in the Restatement of the Law of Torts, Judgments and Restitution. Some of the statements and comments plainly apply only to true joint tort-feasors. Other general statements appear to support appellants' position that the instant suit is not barred. However, I do not find in these statements or comments any specific and flat rejection of appellee's position here that where an election is made by a plaintiff to first recover judgment against the master for a tort committed by the servant for which the master is only derivatively liable, and full payment is legally tendered by the master, that the election is completed and

is a bar to a second suit against the servant on the same cause of action. If the rules announced in Restatement of the Law can properly be specifically construed against appellee's stated position, then I do not believe that they are supported by analogous Texas decisions nor by the weight of authority elsewhere.

I also do not agree with appellants' contention that the judgment against the master has not been satisfied. The appellee not only tendered full payment of the judgment to the district clerk and made him an agent for the purpose of paying appellants but, in addition, made a legal tender in cash. In my view, this is the equivalent of satisfaction of the judgment The judgment debtor did everything he was required to do to satisfy it; and he was entitled to have the judgment against him discharged. When appellants elected to first pursue their cause of action against the master, in my view, this included the obligation to accept payment of it, certainly, where it was promptly made as in this case, and before the second suit against the servant was brought to trial.

While I agree with appellee that appellants' election to first recover judgment against the master coupled with the legal tender of payment constitute a bar to the second suit against the servant, I would not rest affirmance of the judgment upon appellee's contentions as to res judicata or collateral estoppel.

It has been held that within the purview of res judicata the servant is not in privity with the master. Maryland Casualty Co. v. Morris, 1939, Tex.Civ.App., 128 S.W.2d 86 (n. w. h.); 34 Tex.Jur.2d, Judgments, § 418, page 463. The rule as to persons who may be in privity with actual parties to a suit is stated in the case of Cain v. Balcom, 130 Tex. 497, 109 S.W.2d 1044 (1937), as follows: "Privity, in this connection, means the mutual or successive relationship to the same rights of property; that is to say, all persons are privy to a judgment whose succession to the rights of property

therein adjudicated are derived through or under one or the other of the parties to the action, and which accrued subsequent to the commencement of the action." The prior action here was brought solely against the master. In my view, appellee, the servant, was not in privity with the master in so far as the first suit was concerned under the rules laid down by the above-cited cases. Because appellee was not actually a party to the first suit and was not in privity with the master who was sued therein, he would not be protected from the second suit under either res judicata or collateral estoppel. These subjects are discussed in the cases of Houston Terminal Land Co. v. Westergreen, 119 Tex. 204, 27 S.W.2d 526 (1930); Grimes v. Maynard, 1954, Tex.Civ.App., 270 S.W.2d 282 (writ ref.); Ray v. Chisum, 1953, Tex.Civ.App., 260 S.W.2d 118 (wr. ref., n. r. e.); 34 Tex.Jur.2d Judgments, § 450, pages 490–492. McNamara v. Chapman, supra, heavily relied upon by appellee, recognizes that had the judgment against the master proved uncollectible, the subsequent suit against the servant might not have been barred.

Both parties recognize the rule that where the liability of a defendant is derivative (such as that of a master under respondeat superior), a judgment in favor of the party from whom the liability is derived (such as a servant who has committed a tort while in the scope of his employment), may be set up as a defense, even though the defendant in the latter suit was not a party to the first action. See Siratt v. City of River Oaks, 1957, Tex.Civ.App., 305 S.W.2d 207 (wr. ref.); Eastland County v. Davisson, 1929, Tex.Com.App., 13 S.W.2d 673, affirming Tex.Civ.App., 6 S.W.2d 782; Stafford v. Lawyers' Lloyd of Texas, 1943, Tex.Civ.App., 175 S.W.2d 461 (n. w. h.); Allstate Insurance Company v. Brown, 1956, Tex.Civ.App., 289 S.W.2d 300 (n. w. h.). This is not such a case, because the master here was held liable to plaintiffs in the first suit based upon the tortious conduct of his servant.

It is the public policy of this state to avoid a multiplicity of suits. 1 Tex.Jur.2d, Actions, § 45, pp. 555–556. In my view, the instant suit against the servant should be and is barred because of the election made by plaintiffs to first recover judgment and payment thereof from the master, and when a legal tender of full payment was made by him, as is shown here, the election became complete. The judgment should be held to be legally satisfied and plaintiffs' cause of action extinguished.

My original concurring opinion herein is withdrawn and this opinion, on motion for rehearing, is substituted therefor.