**Billy Michael WHITE, Appellant,**

v.

**Jim Wayne DENNISON, Appellee.**

**No. 05–87–00712–CV.**

Court of Appeals of Texas, Dallas.

June 9, 1988.

Rehearing Denied July 14, 1988.

Lonnie C. McQuire, Albert Levy, Kip A. Petroff, Irving, for appellant.

Douglas D. Fletcher, Todd T. Wong, Dallas, for appellee.

Before WHITHAM, STEWART and LAGARDE, JJ.

WHITHAM, Justice.

In this personal injury case arising out of a motorcycle-truck collision, the appellant-cyclist, Billy Michael White, appeals from a take-nothing judgment in favor of the appellee-truck driver, Jim Wayne Dennison. The principal issue is whether an employee receives a dollar-for-dollar credit toward the amount of damages determinable against the employee from the jury's verdict for the amount paid in settlement by the employer who is sued solely under the respondeat superior theory of liability. We conclude that the employee receives the credit. Accordingly, we affirm.

White brought suit against Dennison for liability and against Southwest Graphics Systems for vicarious liability under the doctrine of respondeat superior. Dennison was operating the truck while in the course and scope of employment with Southwest Graphics Systems. Prior to trial, Southwest Graphics Systems settled with White for $100,000.00, and White non-suited the employer, Southwest Graphics Systems. The jury found both White and Dennison equally responsible for the accident and determined total damages at $151,000.00. White moved for judgment for the amount of $75,500.00; Dennison moved for a take-nothing judgment. The trial court entered a take-nothing judgment in favor of Dennison.

In his first point of error, White contends that the trial court erred in allowing Dennison a credit on damages owed as found by the jury. We consider this point in light of the parties' agreement that an

employer and an employee are *not* joint tortfeasors with respect to an employee's negligent conduct committed in the course and scope of employment. Thus, Dennison and Southwest Graphics Systems are not joint tortfeasors. Nevertheless, both parties rely on cases involving joint tortfeasors. Dennison urges the one satisfaction rule enunciated in *Bradshaw v. Baylor University*, 126 Tex. 99, 84 S.W.2d 703 (Tex.Comm'n App.1935, opinion adopted), and insists that the one satisfaction or one recovery rule is alive and well and applicable in cases in which a second defendant has only vicarious liability. White cites *Duncan v. Cessna Aircraft Co.*, 665 S.W. 2d 414 (Tex.1984), and maintains that *Duncan* dealt the one recovery rule a mortal blow in all cases, including cases in which a second defendant has only vicarious liability. White argues that Dennison is no more than a stranger to the bargain attempting to profit from the injustice that the settling defendant supposedly experienced in paying more in settlement than White was awarded by the jury. *See Duncan*, 665 S.W.2d at 431. Hence, White asserts that no sound reason exists for allowing Dennison to escape liability which the jury has allocated to him. *See Duncan*, 665 S.W.2d at 429.

We conclude that White's reliance upon *Duncan* is misplaced. We reach this conclusion in light of the three questions presented to the Supreme Court by *Duncan*: first, whether Texas or New Mexico law controls the construction of a release; second, whether under Texas law the release discharged Cessna's liability to Duncan; and third, whether Cessna, as a strictly liable manufacturer, was entitled to contribution from the pilot for pilot negligence. *See Duncan*, 665 S.W.2d at 417–18. The present case involves none of these issues. Moreover, although conceding that Dennison and Southwest Graphics Systems are not joint tortfeasors, much of White's position in this case is based upon the untenable assumption that here the employer and employee were, indeed, joint tortfeasors, and that for such reason, White may pursue them one at a time, if need be, until he has urged his case separately

against all such so-called tortfeasors. *See Marange v. Marshall*, 402 S.W.2d 236, 241 (Tex.Civ.App.—Corpus Christi 1966, writ ref'd n.r.e.). This theory can have no legal recognition in the doctrine of respondeat superior and is rejected. *Marange*, 402 S.W.2d at 241. Consequently, we decline to treat *Duncan* as controlling in the present case.

Having concluded that White's reliance upon *Duncan* is misplaced, we also conclude that Dennison's reliance upon *Bradshaw* is misplaced. We reach this conclusion because *Bradshaw* involved joint tortfeasors. We note again that the present case is not one of joint tortfeasors. Since we conclude *Bradshaw* inapplicable to the present case, we need not address White's contention that *Bradshaw* stands overruled in light of the Court's language in *Duncan* that "[a]ccordingly, to the extent it conflicts with this opinion, we overrule *Bradshaw v. Baylor University*." *Duncan*, 665 S.W.2d at 432. In any event, we decline to treat *Bradshaw* as controlling in the present case.

Having declined to decide the present case on the holding in either *Duncan* or *Bradshaw*, we turn then to the decision of the Supreme Court which we conclude provides direction to the answer to the principal issue before us. That decision is *Knutson v. Morton Foods, Inc.*, 603 S.W.2d 805, 807 (Tex.1980). In the present case, we deal with an issue arising from the doctrine of respondeat superior. The doctrine, from its inception, was based upon public policy. It is the enterprising superior who puts his employees upon the road. *Knutson*, 603 S.W.2d at 807. In *Knutson*, the plaintiff and the servant were in an automobile accident. The plaintiff sued both servant and master under the doctrine of respondeat superior. The plaintiff entered into a covenant not to sue with the servant upon the servant's paying the plaintiff $10,000.00. The Supreme Court referred to the agreement as a settlement agreement. *Knutson*, 603 S.W.2d at 806, 808. Indeed, the Supreme Court referred to the $10,000.00 as a partial settlement. *Knutson*, 603 S.W.2d at 808. Hence, in the present case,

although we have a motor vehicle accident between the plaintiff and the servant, and a suit brought against the master under the doctrine of respondeat superior, we have the settling defendant in a reversed posture. In *Knutson*, the servant settled, and the case went to trial against the master. In the present case, the master settled, and the case went to trial against the servant. We conclude that this difference between the present case and *Knutson* is a distinction without merit. Therefore, we focus upon an observation made in *Knutson* by the Supreme Court which we consider dispositive of the issue before us.

██ In *Knutson* the Court noted that "Morton Foods ha[d] actually been benefitted since the partial settlement made by the Chastains to the plaintiffs reduce[d] Morton Foods' liability." *Knutson*, 603 S.W.2d at 808. Thus, a settlement made by the servant reduces the liability of the master sued under the respondeat superior theory. We conclude, therefore, that conversely a settlement made by the master sued under the doctrine of respondeat superior reduces the liability of the servant. We reason that if it is the enterprising superior who puts his employees upon the road, *Knutson*, 603 S.W.2d at 807, it is the servant who is actually upon the road and, therefore, entitled to the protection of the settlement dollars paid in furtherance of the master's enterprise upon the road. Indeed, under the doctrine of respondeat superior, master and servant are one and the same. The principal is liable for the act of his servant or agent performed within the scope of his employment. It is derivative liability. The employer and employee composed one entity, for one wrongful act causing injury to one person, usually on one date in one episode. *Marange*, 402 S.W.2d at 239. Thus, we conclude that all money a plaintiff receives from the one master-servant entity for the one wrongful act is in payment of compensation for the injury caused by the one wrongful act of that one entity. Hence, in the present case, to paraphrase *Knutson's* language, we conclude that "the partial settlement made by Southwest Graphics Systems to White reduces Dennison's liability." *See*

*Knutson,* 603 S.W.2d at 808. Consequently, we hold that an employee receives a dollar-for-dollar credit toward the amount of damages determinable against the employee from the jury's verdict for the amount paid in settlement by the employer who is sued solely under the respondeat superior theory of liability. We limit our holding to cases in which the servant is sued by a party other than the master. Our holding does not apply to situations in which the master seeks indemnity from the servant. It follows that the trial court did not err in allowing Dennison a credit on damages owed as found by the jury. We overrule White's first point of error.

██ In his second point of error, White contends that the trial court erred in failing to dismiss a juror who was biased as a matter of law, thereby forcing White to accept at least one objectionable juror. During voir dire examination, White's counsel asked the panel: "Do you have any bias against motorcycles or motorcycle riders in general?"

> JUROR WEED: *I'm very biased against them* because I think the drivers take too many chances. I think you have to be a special kind of person to ride one in the first place. I rode one as a passenger 40 years ago. I would never let my children do it. I think they take liberty with small spaces. You know, they think they can get through, and it's too dangerous. *I'm very biased against them.*
>
> [WHITE'S COUNSEL]: I believe you've convinced me.
>
> JUROR WEED: *Well, I mean to because I am very biased against the drivers.*

(emphasis added). After further voir dire, White's counsel asked the panel as a whole a concluding question: "Now, after hearing the questions that I have asked you, does anyone—has anything suggested itself to you where you may not be able to be a fair and impartial juror?"

> JUROR WEED: *I indicated I would be biased going in, but it might be*

*changed. But going in, I would be biased.*

(emphasis added).

Bias or prejudice disqualifies a juror as a matter of law and removes all discretion from the trial judge. *Gum v. Schaefer,* 683 S.W.2d 803, 808 (Tex.App.—Corpus Christi 1984, no writ). Moreover, even where such a juror is "rehabilitated" through the efforts of counsel or the court by stating that he would decide the case on the evidence and could be fair to both sides, the trial court *must* excuse the juror. *Gum v. Schaefer,* 683 S.W.2d at 808 (emphasis added). In any event, Dennison asserts rehabilitation of juror Weed occurred when the trial court and defense counsel questioned juror Weed further:

> THE COURT: The Court would like to know if there is any reason whatsoever that you feel that you could not sit over in that jury box and listen to the evidence as it is presented and render a fair and impartial verdict based upon the Court's instructions and the Charge of the Court putting to you specific questions which you are to answer. Is there any reason at all that you feel you could not do that fairly?
>
> JUROR WEED: No reason. No reason whatsoever.
>
> \* \* \* \* \* \*
>
> [DENNISON'S COUNSEL]: Mr. Weed, regardless of what your thoughts are, can you tell the Court that you will set those aside and be a fair and impartial juror in this case?
>
> JUROR WEED: Absolutely.
>
> [DENNISON'S COUNSEL]: Are you going to put any greater burden on Mr. White because he was riding a motorcycle?
>
> JUROR WEED: No.
>
> [DENNISON'S COUNSEL]: And your feeling of motorcycle riders, was that just so the Court and me and opposing counsel would know how you felt about motorcycle riders?
>
> JUROR WEED: Yes.
>
> [DENNISON'S COUNSEL]: And you could set that aside?
>
> JUROR WEED: Absolutely.

For the purposes of this opinion, we assume, but do not decide, that juror Weed was subject to being disqualified by the trial court. Our system of jury selection is designed to provide a jury composed of persons who are not biased or prejudiced. The object is an impartial jury. However, the refusal of the trial court to excuse an unqualified juror does not necessarily constitute harmful error. *Hallett v. Houston Northwest Medical Center,* 689 S.W.2d 888, 889–90 (Tex.1985). The harm occurs only if the party uses all of his peremptory challenges and is thus prevented from striking other objectionable jurors from the list because he has no additional peremptory challenges. It is at this point that any harmful error occurs, *i.e.,* when the court is made aware that objectionable jurors will be chosen. *Hallett,* 689 S.W.2d at 890. Thus it is incumbent upon the complaining party to inform the trial court at that time of the error. Once informed, the court is able to determine if the party was in fact forced to take objectionable jurors. *Hallett,* 689 S.W.2d at 890. For these reasons the complaining party waives any error by not timely bringing such error to the attention of the trial court prior to making his peremptory challenges. A party cannot wait until the trial is finished, then seek to reverse an unfavorable verdict by complaining of an error which the trial court could have corrected had it been timely informed of the error. *Hallett,* 689 S.W.2d at 890. It is incumbent upon the complaining party, prior to exercising his peremptory challenges, to advise the trial court of two things: (1) that he would exhaust his peremptory challenges; and (2) that after exercising his peremptory challenges, *specific* objectionable jurors would remain on the jury list. *Hallett,* 689 S.W.2d at 890 (emphasis added). Failure to advise the trial court of these two things constitutes a waiver of any error committed by the court in its refusal to discharge those jurors who were challenged for cause. *See Hallett,* 689 S.W.2d at 890.

In the present case, White challenged juror Weed for cause and later used a peremptory challenge to strike juror Weed

when the trial court refused to discharge Weed. White, however, failed to advise the trial court of *specific* objectionable jurors who would remain on the jury list after he exercised his peremptory challenges. In short, White did not name names. To illustrate, it has been stated that "[i]n order to have properly complained of having to use a peremptory challenge to strike Mr. Glasgow from the jury list, and thereafter having to take an objectionable juror (Warlick), it was necessary that appellants object to taking Mr. Warlick as a juror before appellants exercised their peremptory strike of Mr. Glasgow." *Wade v. Austin*, 524 S.W.2d 79, 84 (Tex. Civ.App.—Texarkana 1975, no writ). Hence, as in *Wade*, White did not notify the trial court of one of the two things required to preserve trial court error. Therefore, we conclude that White waived any error committed by the trial court in its refusal to discharge the challenged juror Weed. Consequently, we find no merit in White's second and last point of error. We overrule White's second point of error.

Affirmed.